JUDGE ABRAMS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x

PRAKASH MELWANI

    Plaintiff,

     v.

VALENTINE IFEATU NWANKWO d/b/a
RESSOROTH, CHIDINMA NWANKWO
a/k/a CHIDINMA KANU-IVI, RESSOROTH,
AMAZON.COM, INC., and DOES 1-5,

    Defendants.

-------------------------------------------------x

No. 19 CV

# 19 CV 01778

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff pro se Prakash Melwani ("Melwani" or "Plaintiff"), as and for his complaint against defendants, Valentine Ifeatu Nwankwo ("Nwankwo") d/b/a Ressoroth, Ressoroth ("Ressoroth"), Chidinma Nwankwo a/k/a Chidinma Kanu-Ivi, ("Chidinma"), and with the others, Does 1-5 (collectively, "the Ressoroth Defendants"), and Amazon.com, Inc. ("Amazon") (collectively, "Defendants") alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.   This is an action for false advertising, trademark infringement, trademark dilution, wire fraud, unfair competition, public deception, unjust enrichment, and related claims in violation of the laws of the United States and the State of New York. Plaintiff seeks an injunction, treble damages, related relief, and such other relief as the Court deems just, proper and equitable.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. This Court also has jurisdiction over this matter under 18 U.S.C.A §§ 1964(a) and 1964(c).  Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq.; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1343;  and claims under the statutory and common law of the State of New York. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

3.      This Court has personal jurisdiction over Defendants under Sections 301 and 302 of the New York Civil Practice Laws and Rules because Defendants continuously and systematically conduct, transact, and solicit business in this District, and because the events giving rise to this complaint occurred in this state and/or had effects in this state.

## THE PARTIES

4.      Plaintiff Melwani is a United States citizen with an address in the Southern District of New York at 101 West 23rd St., Suite 163, New York, NY 10011.  Plaintiff is the individual owner of a family of Royal Silk® ("Royal Silk®") trademarks ("RS Marks") that are the subject of this lawsuit.  Plaintiff has been injured and will continue to be injured in New York and in this judicial district by Defendants' wrongful and unlawful acts.

5.      Upon information and belief, defendant Valentine Ifeatu Nwankwo ("Nwankwo") is an individual person with an address at 14003 Frost Creek Drive, Pearland, Texas 77584.

6.      Further, upon information and belief, Nwankwo conducts business under the names Ressoroth, ressoroth, Resso Roth, Resso and Roth, and R + R (collectively, "Ressoroth") at the same address, 14003 Frost Creek Drive, Pearland, Texas 77584.

7.      Upon information and belief, defendant Chidinma Nwankwo a/k/a Chidinma Kanu-Ivi, ("Chidinma") is an individual person with an address at 14003 Frost Creek Drive, Pearland, Texas 77584.

8.      Upon information and belief, Chidinma is married to Nwankwo and assists him in the management, running, housing and operation of Ressoroth under various alias names.

9.      Upon information and belief, defendant Ressoroth, a/k/a ressoroth, a/k/a Resso Roth, a/k/a Resso and Roth, and a/k/a R + R (collectively, "Ressoroth"), are un-registered business entities, that ostensibly market moderately-priced men's fashion accessories, with a principal address at 14003 Frost Creek Drive, Pearland, Texas 77584.

10.     Further, upon information and belief, defendant Ressoroth, as identified herein, a/k/a "ressoroth," is the known name of a third-party seller of men's fashion accessories at the well-known Amazon marketplace: www.amazon.com ("Amazon Marketplace").   Moreover, Ressoroth is an online seller of men's fashion accessories at the E-commerce website: www.ressoandroth.com ("Ressoroth website").

11.     Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon owns and operates the popular online marketplace, earlier identified herein as the Amazon Marketplace.

12.     The true names and capacities, whether individuals, business entities or otherwise of defendants named as DOES 1-5, are unknown to Plaintiff at time of this complaint.  DOES 1-

5 are parties who, from 2017 to 2018, sold or assisted in the selling of certain Ressoroth products at the Amazon marketplace, more specifically — an alleged white Royal Silk® pocket square.

13.     Plaintiff alleges that defendants Nwankwo, Chidinma, Ressoroth, and DOES 1-5, (collectively, "the Ressoroth Defendants"), operating as a joint enterprise with intent to scheme, are jointly, severally and concurrently liable for all the causes of action itemized in this lawsuit. Further, at all relevant times, the Ressoroth Defendants, inclusive of DOES 1-5, were the agents, servants and employees of every other one of the Ressoroth Defendants and the improper acts of each were conducted within the course and scope of that agency, scheme or employment.

## PRELIMINARY ALLEGATIONS

**Plaintiff's Business and Trademarks**

14.     Plaintiff is the owner of all rights, title, and interest in and to a family of multiple registered and common law trademarks using "ROYAL SILK" as all or a significant portion of the mark ("the RS Marks"). The RS Marks include, but are not limited to, the following U.S. Trademark Applications, Registrations and IC numbers:[1]

| Trademark | Reg. No. | Registration Date | IC | Goods or Services |
|---|---|---|---|---|
| ROYAL SILK | 2338016 | April 4, 2000 | 25 | Wearing apparel made wholly or substantially of silk, namely, tops, shorts, skirts, boxers, scarves, sashes, mufflers. |
| ROYAL SILK (Word and Design mark) | 3578997 | February 24, 2009 | 25 | Wearing apparel made wholly or substantially of silk, namely, scarves, ties, boxer shorts, skirts, tee shirts, long-sleeved shirts, and shirts for suits. |
| ROYAL SILK | 3745470 | February 24, 2009 | 3 | Hair conditioner, hair shampoo. |

[1]   The IC number designates the International Classification code number of Goods and Services for the purpose of the registration of a trademarks at the United States Patent and Trademark Office.

| | | | | |
|---|---|---|---|---|
| ROYAL SILK | 5076644 | November 8, 2016 | 24 | Handkerchiefs, made in whole or in substantial part of silk; silk fabric. |
| ROYAL SILK | 5076644 | November 8, 2016 | 45 | Providing information in the fields of silk, the folklore of silk, the history of silk, and the proper care of silk via websites on a global computer network. |
| ROYAL SILK | *(Application #)* # 88101107 | *(Application Date)* August 31, 2018 | 22 | Laundry wash bags |

15.    Some of the RS Marks have achieved incontestable status under 15 U.S.C. § 1065, as the result of which, under U.S.C. § 1115(b) of the Trademark Act, the registrations are the conclusive evidence of the validity of the marks and of the registrant's exclusive right to use the marks on or in connection with the goods or services specified in the affidavit establishing the incontestability.

16.    Plaintiff's Royal Silk® marks are validly registered or applied for, subsisting, unrevoked and uncancelled.

17.    On September 20, 2005, a unanimous jury verdict in this Court found that Royal Silk® was a famous and/or distinctive trademark.[2]

18.    The RS Marks are famous and disctinctive and well-known to the buying public as identifying and distinguishing Plaintiff's Royal Silk® goods exclusively and uniquely as a reliable source of the high-quality silk merchandise and services to which the RS Marks are applied. The RS Marks have acquired enormous value, goodwill and recognition in the U.S.

19.    Plaintiff is engaged in the licensing of the RS Marks for the manufacture, distribution, sale, marketing, and promotion in interstate commerce of the Royal Silk® brand line of clothing, accessories, personal care products, and services.  Plaintiff and/or his predecessors-

---

[2] *Prakash Melwani v. Pradip K. Jain et al.,* 02 Civ 1224 (DF)

in-interest have been continuously using the RS Marks for over forty years, beginning as early as March 1978.

20.    Royal Silk, Ltd. ("RSL") and Royal Silk Direct, Inc. ("RSD") are two of the companies licensed by Plaintiff to market, sell and distribute Royal Silk® goods and services.

21.    Both RSL and RSD are New York state corporations.

22.    RSD is a long-established, consumer-based online seller and merchant of Royal Silk® products and services with the website address: www.RoyalSilkUSA.com ("RS Website").

23.    The RS Website and a range of Royal Silk® products can easily be found and discovered through all the major online search engines in the United States and worldwide.

24.    More significantly, RSD is a third party seller at the Amazon Marketplace in two different ways: (a) firstly, whereby RSD directly sells and ships Royal Silk® goods to Amazon's customers ("RSD's Direct Sales") ; (b) secondly, RSD is a direct supplier of certain Royal Silk® goods to Amazon, whereby Amazon, through its FBA Channel Program ("FBA Channel")[3], ships and promotes authentic Royal Silk® goods to its own member customers and through its own advertising, marketing, and convenient, low-cost, high-speed shipping services ("RSD's FBA Sales").  Thus, RSD is both a direct retailer of Royal Silk® goods at the Amazon website as well as a supplier of certain higher-volume Royal Silk® goods to Amazon for its FBA Channel.

25.    By now it is commonly known that Amazon is one of the largest online sellers of consumer goods in the Americas, and likely the largest one.

26.    RSD has been a third party seller of Royal Silk® goods at Amazon since 2006.

---

[3] The word "FBA" is an acronym for "Fulfilled by Amazon"

27.     Additionally, for many years, RSD has participated in the Amazon Brand Registry Program ("Amazon Brand Registry"), whereby Amazon grants certain enhanced privileges to vetted and verified brand owners of intellectual property, as well as facilitates, accelerates, and resolves brand issues between intellectual property rights' owners and other third party sellers in the context of the Amazon Marketplace.

28.     Whether in the case of RSD's Direct Sales or RSD's FBA sales, and before any product can be sold in the Amazon Marketplace, as a third party seller, RSD is required by Amazon, at a minimum, to upload the specific product's unique universal price code number ("UPC Number"), selling title, selling text, selling images of the specific product to be sold through the Amazon Marketplace in order to create a unique sales page ("Sales Page") that will ultimately be viewable by worldwide consumers that are visiting the Amazon Marketplace.

29.     Once Amazon approves a third party seller's product for sale in the Amazon Marketplace, it assigns that specific product a unique 10-digit Amazon catalog number that identifies the specific product, known as the ASIN ("ASIN")[4].

30.     Because RSD is a participant in the Amazon Brand Registry, it is not required to submit a UPC number, but can instead provide a unique brand Item Number ("Item Number") of any specific product to be sold in the Amazon Marketplace.  Similarly, as a participant in the Amazon Brand Registry, RSD is allowed to create an enhanced sales page ("Enhanced Sales Page") that contains more space for more selling content in the form of additional images, graphics, copy, videos, etc. in the lower half of the Sales Page.

---

[4] ASIN is an acronym for Amazon Special Identification Number. This number, issued by Amazon, is assigned to each unique product sold in the Amazon Marketplace.

## GENERAL ALLEGATIONS

**The Electronic Hijackings of Plaintiff's Item 139 at the Amazon Marketplace**

31.     Since as early as 2012, one of the key Royal Silk® goods sold by RSD through Amazon's FBA Channel was, and still is, a fine white silk pocket square, Item Number 139 as identified by RSD, and with an ASIN code number B000LMRFX2 as identified by Amazon. Hereinafter, this fine white silk pocket square will be identified as Item 139 ("Item 139").

32.     Item 139 was displayed on an Enhanced Sales Page. **Exhibit A** is a true partial copy taken from the Enhanced Sales Page for Item 139 as recently featured in the Amazon Marketplace around the time of this writing.

33.     Upon information and belief, since at least as early as December 2017, the Ressoroth Defendants, without the consent or permission of plaintiff Melwani, have manufactured, purchased, imported, distributed, advertised, marketed, promoted, shipped, offered for sale, and sold, throughout the United States, silk goods in the form of alleged Royal Silk® merchandise (the "Infringing Goods"). The Infringing Goods are competitive with, related to, and are directed and targeted in the same Amazon Marketplace and towards the same group of consumers as the goods to which the RS Marks are applied or likely to be applied.

34.     One of the Infringing Goods sold and marketed by Ressoroth was a counterfeit version of Item 139 ("Counterfeit 139").

35.     Upon information and belief, for several years, Ressoroth has been, and still is, an active third party seller with a storefront in the Amazon Marketplace ("Ressoroth Storefront") that displays a variety of moderately-priced men's fashion accessories.

8

36.     One of the Infringing Goods sold and marketed at the Ressoroth Storefront was Counterfeit 139.  Upon information and belief, Counterfeit 139 first appeared at the Ressoroth Storefront as well as the FBA Channel at least as early as January 2018.

37.     On or around July 24, 2018, Plaintiff became aware of the drastic drop in sales of Item 139 for the first six months of 2018.  Thereupon, Plaintiff commenced an investigation and it was quickly decided that, in order to increase sales of Item 139, immediate text and image changes and edits had to be implemented to the Enhanced Sales Page for Item 139.

38.     Thus, on the same day, July 24, 2018, RSD made numerous attempts to implement the necessary edits and updates to the Enhanced Sales Page for Item 139.  In short, all these multiple attempts, over the course of several hours, failed inexplicably because Amazon's computerized cataloging system simply could not or would not effectuate the updates for Item 139 within the normal time it takes for changes to apply, usually within the hour.

39.     As a result, on the same day, July 24, 2018, as the brand owner of the Royal Silk® mark, Plaintiff contacted the support group at Amazon ("Amazon Support") to find out why RSD could not edit the Enhanced Sales Page for Item 139.  Amazon Support informed Plaintiff that the reason RSD could not edit its Enhanced Sales Page for Item 139 because RSD was no longer the recognized seller for Item 139.  Shocked that RSD had lost control of its own Enhanced Content Page that it had created and paid for, Plaintiff then enquired to find out from Amazon Support as to how one or it determined the seller information.  It was only then, that Plaintiff learned that in a tiny lower corner of the right column of the Enhanced Sales Page for Item 139, and under the heading "In Stock," the seller information appeared in a miniscule line that read: *Sold by ressoroth and Fulfilled by Amazon.*"  In other words, what appeared to be

Item 139's were being sold and fulfilled through the Amazon FBA Channel but sourced by Amazon through a seller identified simply as "ressoroth" (sic). **Exhibit B** is a true copy of the hijacked page ("the Hijacked Page") that was cleverly electronically engineered, manipulated, and activated by Ressoroth to sell Counterfeit 139's. The Hijacked Page looks almost the same as RSD's Enhanced Selling Page but with few minute, imperceptible changes in the text copy. However, the bulk of the text copy, all the photo images and all design graphics are the same.

40.     The next day, Plaintiff conducted a search for the word "ressoroth" in the Amazon Marketplace. The instant search revealed Counterfeit 139 to be the first pictorial item featured in a list of thirty-nine image results that were from the Ressoroth Storefront. **Exhibit C** is a true copy from the Amazon Marketplace page showing the first three items of a group of thirty-nine items under the Ressoroth Storefront search results as conducted by Plaintiff on July 25, 2018.

41.     Almost immediately after conducting the "ressoroth" search, Plaintiff shuttled between Amazon Support and Amazon Brand Registry to restore RSD as the seller of Item 139. After considerable back and forth, but within a day, Amazon was able to restore RSD as the rightful seller of Item 139. Astonishingly, on the next day, Plaintiff learned that the Ressoroth Defendants had re-hijacked and taken control of the Enhanced Sales Page for Item 139.

42.     Once again, Plaintiff notified Amazon Support that seller Ressoroth had re-taken control of the Enhanced Sales page for Item 139. This time Amazon Support was able to rectify the problem in a shorter amount of time and RSD was restored as the brand seller of Item 139.

43.     But once again, within about two hours of RSD being restored as the seller of Item 139, Ressoroth was able quite easily to re-hijack and take control of the Enhanced Sales Page for Item 139 for the third time. Over the next two or three days, and despite Amazon

Support's best efforts, Ressoroth was able to hijack the Enhanced Sales Page for Item 139 for the fourth and fifth time.

44.     Finally, at that point, Amazon Support concluded that RSD's listing issue for Item 139 and the Enhance Sales Page had to be further escalated so as to get it resolved by the people at the catalog department ("Amazon Catalog Dept.") and informed Plaintiff that someone from that department would shortly get in touch with him.

45.     And in fact, a representative from the Amazon Catalog Dept. contacted Plaintiff. After some back and forth and failed attempts, it was determined that there was no easy fix for this problem, but it could be fixed provided the Enhanced Sales Page for Item 139 first be de-listed and shut down for several hours to de-bug it, possibly as long as one day, then RSD's page would be restored as a new page for Item 139 that might need some edits on the part of RSD.

46.     On or about July 29, 2018, Amazon Catalog Dept. was able to generate a fresh new page as the replacement for RSD's Enhanced Sales Page for Item 139.  The technical issue was finally fixed.  Since July 29, 2018, RSD has been the recognized brand seller for Item 139.

47.     To summarize, from about early January 2018, and perhaps sooner, to July 2018, Ressoroth was able not only to ship Counterfeit 139's to Amazon's fulfillment centers for the FBA Channel but also to hijack and take complete control of RSD's Enhanced Sales Page for Item 139 in the Amazon Marketplace, not just once but a multiple number of times.

48.     Upon information and belief, in order to accomplish the hijacking and control of RSD's Enhanced Sales Page for Item 139, Ressoroth, operating remotely with others, committed deliberate wire fraud, by exploiting one or more vulnerabilities in the computer code for the database of the Amazon cataloging system for items listed in the Amazon Marketplace.

## Ressoroth's Misrepresentations About Counterfeit 139

49.      Under Amazon's rules for third party sellers, in order to market, promote and sell a branded product, Ressoroth would have had to provide Amazon a legitimate invoice showing how it had acquired the alleged Royal Silk® goods.  Upon information and belief, Ressoroth did not provide such an invoice or other form of assurance about Item 139 to Amazon.

50.      As part of his investigation of the Hijacked Page, and under the informal rules of Amazon Support, Plaintiff was required to order and get a representative sample of Counterfeit 139.  And, in fact, as soon as he learned of the breach by Ressoroth, Plaintiff ordered and received samples of Counterfeit 139.  Based on side-by-side comparison of Item 139 versus Counterfeit 139, Plaintiff was able to examine the size, weight, type of silk, and other features of Counterfeit 139 and determine that Ressoroth had made several false claims about its goods.

51.      For example, in the sales text of the Hijacked Page, Ressoroth made the following specific claims: (a) that Counterfeit 139 was a genuine Royal Silk® product; (b) that the size of Counterfeit 139 was sixteen-inches squared and that it was full-sized; (c) that Counterfeit 139 was made of genuine 60 gram Silk Twill; (d) that Counterfeit 139 was the beneficiary and recipient of 254 positive customer reviews in the Amazon Marketplace with an average high rating of about 4.5 Stars out of 5 Stars; and (e) that Counterfeit 139 was made in Korea.  Each of these five claims made by the Ressoroth Defendants was not just misleading but literally false.

52.      The wrongful acts committed by Ressoroth, along with others, have caused and are likely to cause deception, confusion and mistake among consumers. For example, that (a) the Infringing Goods, including Counterfeit 139, originated with Plaintiff or one of his licensees; (b)

12

there is some affiliation, connection or association between Ressoroth and Plaintiff or one of his licensees; (c) the Infringing Goods were legitimately acquired from someone other than Plaintiff or one of his licensees; and/or (d) such Infringing Goods are being offered to consumers with the sponsorship and/or approval of Plaintiff or his licensees.

53.    Ressoroth's wrongful and unlawful acts have caused and will continue to cause dilution in the form of blurring and tarnishment to the RS Marks to the detriment of Plaintiff.

54.    Ressoroth's wrongful acts were willful and intentional, in that this defendant either knew that the Infringing Goods bore a trademark confusingly similar, substantially indistinguishable and/or identical to the RS Marks, or willfully ignored such fact.  Ressoroth's acts were undertaken in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said products, and to gain the benefit of the extensive goodwill associated with the RS Marks much to the detriment of Plaintiff.

55.    Ressoroth's acts with respect to the Infringing Goods were wrongful, knowing, willful and intentional even if the Infringing Goods did not bear a Royal Silk® mark because the goods were advertised as being Royal Silk® goods.

56.    Since at least as early as December 2017, Ressoroth along with others have been aware that they have been infringing at least one or more of the RS Marks.

57.    The consumers of Royal Silk® goods at the Amazon Marketplace and other online marketplaces are ordinary, everyday consumers, particularly those that are likely buy inexpensive items on impulse and are most likely to be confused by similar marks.

58.   The conduct of Ressoroth, along with others, was not just improper and unlawful, but also knowing, scheming, deliberate, willful, and intentionally deceptive to the public and has been in total disregard of Plaintiff's lawful rights.

## Amazon's Culpability In This Matter

59.   Over the course of at least the first seven months of 2018, Amazon received and stocked, in its fulfillment centers, Counterfeit 139's, that were specifically furnished by Ressoroth to enable Amazon to ship such Infringing Goods to its individual member customers. Thus, Amazon knew or should have known that Counterfeit 139's were not the same size and weight as Item 139, but in fact almost 44% smaller and less in size and weight; moreover, Amazon knew or should have known about the incorrect dimensions of Counterfeit 139's had it simply checked its customer complaint forum that is publicly posted; and despite such facts, Amazon turned a blind eye and continued to ship such inferior Infringing Goods to its unwary customers to the detriment of Plaintiff.  In doing so, Amazon deprived RSD of its legitimate sales.  The precise amount of sales lost to Ressoroth is known by Amazon and thus discoverable. Beyond the loss of sales, RSD lost the names and addresses of such customers, who are generally a valuable source of additional and repeat sales, to Ressoroth who, in turn, benefitted from the acquisition of such customer names and addresses, to the detriment of RSD and Plaintiff.

60.   Amazon knew or should have known that its cataloging system for items in the Amazon Marketplace was flawed with vulnerabilities in its computer code, such that its own vetted third party Amazon sellers, such as Ressoroth, were easily able to bypass Amazon's cataloging system and to manipulate as well as to hijack certain sales pages to gain unfair advantage over their competitors in the Amazon Marketplace.

14

## Ressoroth's Scheme to Employ Wire Fraud to Defraud Plaintiff

61. Over the course of at least the first six to seven months of 2018, Ressoroth conspired with Nwankwo, Chidinma, and others, through a pattern of racketeering activity, specifically wire fraud through the use of an electronic device, directly or indirectly participated in an enterprise the unlawful activities of which affect interstate commerce.

62. Upon information and belief, Nwankwo and Ressoroth are essentially the same person and, in fact, Nwankwo was, and still is, the mastermind behind the plot to commit wire fraud against Plaintiff and his lawful intellectual property by means of false and fraudulent pretenses, representations, and promises. The plot, as described in earlier paragraphs, was to sell Counterfeit 139's by exploiting a weakness in Amazon's computer system for cataloging distinct items which were sold in the Amazon Marketplace, in order to block the sales of legitimate Item 139's. Operating remotely, for a period of at least seven months, Ressoroth used a computer or an electronic device to commit wire fraud and bring its scheme against Plaintiff to fruition.

63. Significantly, from a list of millions of products that are available to the public in the Amazon Marketplace, Ressoroth, participating with Nwankwo, Chidinma, and others specifically targeted to convert Item 139 sales for its own benefit through the use of the Hijacked Page and the sale of Counterfeit 139's.

64. As a direct result of Ressoroth's wire fraud, RSD lost sales of Item 139 for a period of at least seven months. The exact amount of such sales is clear and definite and not speculative; and the amount of such improper sales is known by both Amazon and Ressoroth, and will be determined during the course of this lawsuit.

# FIRST CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
### *False Advertising Under 15 U.S.C. § 1125(a)(1)(B)*

65.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 above as if fully set forth herein.

66.    As evidenced by **Exhibit B** and **Exhibit C**, and as more fully described in ¶¶ 51 to 52, the Ressoroth Defendants have made use of false advertising and/or false or misleading representations of facts that are likely to cause confusion, deception, and mistake among the consuming public.

67.    Upon information and belief, Ressoroth made these false and misleading statements at the Amazon Marketplace to induce consumers to purchase products allegedly bearing Plaintiff's Royal Silk® mark from the Ressoroth Defendants, while paying prices for and expecting to receive a 16" square made of 60 gram Silk Twill, that was made in Korea, and not some smaller 12" square made in China and made of questionable silk.

68.    The Ressoroth Defendants' improper and unlawful conduct has been knowing, deliberate, willful, and intentionally deceptive to the public and has been in total disregard of Plaintiff's lawful rights and in violation of 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

69.    The Ressoroth Defendants have injured Plaintiff in an amount to be determined during the course of this litigation and have caused and will continue to cause irreparable injury to Plaintiff and his licensees, for which Plaintiff has no adequate remedy at law.

70.    Beyond the loss of revenue, RSD has also lost the names and addresses of all such customers who received Counterfeit 139's as supplied by Ressoroth and shipped by Amazon.

## SECOND CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
### *Federal Trademark Infringement under 15 U.S.C. § 1114(1)(a)*

71.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 70 above as if fully set forth herein.

72.    The Ressoroth Defendants' willful use of the Royal Silk® mark, without Plaintiff's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the Infringing Goods.

73.    The Ressoroth Defendants' wrongful and unlawful conduct has been knowing, deliberate, willful, and intentionally deceptive to the public and has been in total disregard of Plaintiff's rights.

74.    The Ressoroth Defendants' misconduct has injured Plaintiff in an amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *Federal Trademark Dilution under 15.U.S.C. § 1125(c)*

75.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 above as if fully set forth herein.

76.    The RS Marks are famous and inherently distinct. Plaintiff and/or his predecessor-in-interest, in connection with the promotion and sale of their products, have used the RS Marks on a national and international basis since as early as April 1978. As a result of Plaintiff's extensive and substantial marketing and promotion of the RS Marks, the consuming

17

public and trade have come to associate the RS Marks, uniquely and distinctly, particularly with respect to silk clothing, with Plaintiff's licensees and their high quality merchandise.

77.    The Ressoroth Defendants and Amazon have injured Plaintiff in an amount to be determined at trial and have caused irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. Long after the RS Marks became famous, the Ressoroth Defendants, without consent or authority from Plaintiff, used unauthorized reproductions, counterfeits, copies and colorable imitations of the RS Marks and thereby caused, and are causing, the actual dilution by blurring and tarnishment of the distinctive qualities of the registered RS Marks.

78.    By virtue of flaws and vulnerabilities in the electronic system for the database of the Amazon cataloging system for items listed in the Amazon Marketplace, along with the failure to properly examine the dimensions of Counterfeit 139's that were stocked in its own fulfillment centers, as well as the failure to be attentive to its customer complaints, Amazon has directly or indirectly caused dilution by blurring and tarnishment of the distinctive qualities of the registered RS Marks and thus injured Plaintiff in an amount to be determined at trial.

79.    By and through their unscrupulous and unlawful acts, the Ressoroth Defendants have deliberately sought to trade on and benefit from the distinctive value and reputation of the RS Marks and thus have caused dilution of the RS Marks.

80.    The Ressoroth Defendants and Amazon have caused dilution by blurring of the RS Marks, by which the essential connection in consumers' minds between the RS Marks and the goods and services offered by Plaintiff or his licensees are weakened and denigrated.

81.    Due to the questionable and dishonest value of the Infringing Goods, the Ressoroth Defendants have caused dilution by tarnishment to the RS Marks, thereby lessening the value of the RS Marks.

82.    As a result of the above acts, Defendants have caused trademark dilution to the RS Marks in violation of 15 U.S.C. § 1125(c).

83.    The Ressoroth Defendants' knowing, deliberate, improper and wrongful conduct has injured Melwani in an amount to be determined at trial and has caused and is likely to cause irreparable injury to Melwani and his marks, for which Melwani has no adequate remedy at law. Amazon's conduct has been improper under basic and ordinary business practices and under the covenant of good faith and fair dealing.

## FOURTH CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
### *RICO Wire Fraud under 18 U.S.C. § 1343*

84.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

85.    Over the course of at least the first seven months of 2018, Ressoroth, Nwankwo, Chidinma and others, conspired through a pattern of racketeering activity, specifically wire fraud through the use of an electronic device, and directly or indirectly participated in an enterprise the unlawful activities of which affect interstate commerce.

86.    Ressoroth, Nwankwo, Chidinma and others devised the plot to commit wire fraud against Plaintiff and his lawful intellectual property by means of false and fraudulent pretenses, representations, and promises. The plot, as described earlier, was to offer the sale of Counterfeit 139's by exploiting a weakness in Amazon's electronic system for cataloging distinct items

19

which were sold in the Amazon Marketplace and to block the sales of legitimate Item 139's. Operating remotely, for a period of at least six to seven months, Ressoroth used a computer or an electronic device to commit such wire fraud and bring its scheme against Plaintiff to fruition in the form of the Hijacked Page not just once or twice but several more times than that.

87.     As a proximate cause of Ressoroth's wire fraud, RSD lost sales of Item 139 for a period of at least six to seven months.  The exact amount of such sales is neither speculative nor hypothetical.  In fact, the precise dollar amount of loss is clear and definite, and is known to both Amazon and Ressoroth, and will be determined during the course of this lawsuit.

88.     Under 18 U.S.C. § 1964, Plaintiff is entitled to recover threefold the damages he sustained and the cost of this lawsuit and legal fees.

## FIFTH CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
*Unfair Competition under 15 U.S.C. § 1125(a)(1)(A)*

89.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 88 above as if fully set forth herein.

90.     Plaintiff has expended substantial time, resources, expenses, and effort to develop an obtain an extremely good reputation and goodwill for the RS Marks .

91.     The Ressoroth Defendants have knowingly and deliberately engaged in deceptive and unlawful acts to damage the goodwill associated with Plaintiff's trademark and to damage the advantage that Plaintiff had accrued in its relationship with Amazon for the Ressoroth Defendants' own benefit and monetary gain, at Plaintiff's expense.

92.     Ressoroth's claims about Counterfeit 139, as itemized in ¶51, are false, fraudulent and misleading representations of fact in commercial advertising that misrepresent the nature, characteristics, qualities, and geographic origin of Plaintiff's goods.

93.     The Ressoroth Defendants' wrongful acts constitute trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

94.     The Ressoroth Defendants' improper and wrongful misconduct has been in violation of Plaintiff's rights and without his consent, has caused and will cause confusion, mistake, and/or deception among consumers and the public as to the source, origin, sponsorship, and/or quality between Defendants' goods and the Royal Silk® goods licensed by Plaintiff.

95.     The Ressoroth Defendants' improper and unlawful conduct has been knowing, deliberate, willful, and intentionally deceptive to the public and has been in total disregard of Plaintiff's lawful rights and in violation of 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(2).

96.     The Ressoroth Defendants' improper, unscrupulous, and wrongful misconduct has injured Plaintiff in an amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff and to the goodwill and reputation of his RS Marks, for which Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
*New York General Business Law §349 – Unfair Deceptive Acts and Practices*

97.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 96 above as if fully set forth herein.

98.     The Ressoroth Defendants' aforementioned acts constitute deceptive acts and practices, that have caused consumer injury and will continue to cause consumer injury.  The

Ressoroth Defendants' aforementioned acts not only harmed and continue to harm Plaintiff, but also harmed and continue to harm the public interest in the State of New York, all in violation of New York General Business Law § 349.

99.     Defendants' willful and unscrupulous misconduct has injured Melwani and has caused and will continue to cause irreparable injury to Melwani, for which Melwani has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
*Trademark Dilution under N.Y. General Business Law § 360-1*

100.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 99 above as if fully set forth herein.

101.     The RS marks are famous and distinctive.

102.     The Ressoroth Defendants' commercial use of the Royal Silk® mark for goods, that are materially different from Plaintiff's authorize products, has diluted and is likely to dilute the distinctive quality of the RS Marks by diminishing the ability of these marks to exclusively identify and distinguish Plaintiff's goods and services, and by tarnishing Plaintiff's RS Marks with Counterfeit 139's of inferior quality that were advertised in the Amazon Marketplace, arguably the largest e-commerce website in the United States, and shipped by Amazon from its own fulfillment centers to its customers.  As a result, The Ressoroth Defendants have injured Plaintiff's or his licensees' public image and business reputation and/or diluted the distinctive quality of the RS Marks in violation of New York General Business Law § 360-1.

103.     Amazon's failure to inspect the dimensions of Counterfeit 139's, along with its repeated failures to secure its website and its electronic system from one of its own vetted,

verified and authorized third party vendors, and its failure to monitor its customer messaging system, has directly or indirectly contributed to the dilution of Plaintiff's RS Marks.

104. The Ressoroth Defendants' improper, unscrupulous, and unlawful conduct has been knowing, deliberate, willful, and unscrupulous; and has been in total disregard of Plaintiff's lawful rights.

105. The Ressoroth Defendants' and Amazon's improper and wrongful acts have injured Plaintiff in an amount to be determined at trial and have caused, are causing, and threaten to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### *UNJUST ENRICHMENT*

106. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 105 above as if fully set forth herein.

107. By virtue of The Ressoroth Defendants' knowing, deliberate, improper, unscrupulous, and unlawful acts described above, Defendants have been unjustly enriched in an amount to be proven in the course of this lawsuit.

108. The Ressoroth Defendants' retention of monies gained through willful, unlawful and deceptive business practices, wire fraud, false advertising, infringement, and tarnishment would serve to enrich Defendants unjustly and would be contrary to the interest of justice.

109. Amazon's retention of monies, in the form of all fees and commissions from the improper and unlawful sales of Counterfeit 139's, would serve to enrich Amazon unfairly in spite of its wrongful business conduct, including to allow Ressoroth to continue selling in the Amazon Marketplace to this day.

## NINTH CLAIM FOR RELIEF AGAINST THE RESSOROTH DEFENDANTS
### *Unfair Competition under the Common Law of New York*

110.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 107 above as if fully set forth herein.

111.    The Ressoroth Defendants have sold and distributed Counterfeit 139's that are materially different from Plaintiff's Royal Silk® goods that are authorized for sale by Plaintiff.

112.    The sale of Counterfeit 139's by the Ressoroth Defendants deprives Plaintiff's ability to ensure the high quality of goods bearing Plaintiff's RS Marks and to maintain the goodwill and reputation associated with Plaintiff's Royal Silk® brand.

113.    The Ressoroth Defendants' sale of materially different goods under Plaintiff's Royal Silk® mark constitutes a false designation of origin and false description or claim that the sale of Counterfeit 139's is authorized by Plaintiff.

114.    The Ressoroth Defendants' willful and wrongful acts constitute unfair competition under the common law of the State of New York.

115.    The Ressoroth Defendants' willful and wrongful conduct has caused irreparable injury to Plaintiff and to the goodwill of his RS Marks.

116.    Further, the Ressoroth Defendants' wrongful conduct has deceived and harmed the public.

117.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, Melwani demands that a judgment be entered granting the following relief:

1.   Preliminarily and permanently enjoining and restraining the Ressoroth Defendants and their affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them from:

(a)      imitating, copying or making unauthorized use of the Royal Silk® marks;

(b)      manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying goods and/or services bearing any unauthorized reproduction, counterfeit, copy or colorable imitation of the Royal Silk® marks, either as shown at the USPTO or in conjunction with other words, marks or designs;

(c)      using any mark confusingly similar to any of the Royal Silk® marks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any goods or services in such manner as to relate or connect, or tend to relate or connect, such goods and services in any way with Plaintiff or his licensees or to any goods or services sold, sponsored, approved by, or connected with Plaintiff's Royal Silk® marks;

(d)      engaging in any other activity, singly or with third parties, constituting unfair competition with Melwani or his licensees, or constituting an infringement of any of the Royal Silk® marks or Melwani's rights in, or his rights to use or exploit such trademarks, or the reputation and the goodwill associated with the Royal Silk® marks; and

(e)      engaging in any other activity, including the effectuation of assignments or transfers of their interests in marks confusingly similar to the Royal Silk® marks, the formation of other corporations, partnerships, associations or other entities or the utilization of any other

devices, including transfer of goods, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 1(a) through 1(d) above.

2.   Directing that the Ressoroth Defendants deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, plates, molds, matrices or other means of production, wrappers, receptacles and advertisements in their possession, custody or control bearing resemblance to the Royal Silk® marks and/or any unauthorized reproductions, counterfeits, copies or colorable imitations thereof.

3.   Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products at issue in this case that have been offered for sale, sold or otherwise circulated or promoted by the Ressoroth Defendants are authorized by Melwani or his licensees or are related to or associated in any way with Melwani's Royal Silk® goods or services.

4.   Awarding Melwani all compensatory, statutory, and punitive damages sustained by him as a result of the Ressoroth Defendants' wrongful acts, and trebling those amounts, pursuant to 15 U.S.C. § 1117 and 18 U.S.C. §1964(c).

5.   Directing that the Ressoroth Defendants and Amazon provide complete accountings of all sales and transfers made of all the Infringing Goods, whether identified or not in the Complaint by Plaintiff, or in any subsequent amended complaints by Plaintiff.

6.   Directing that the Ressoroth Defendants provide complete accounting of all purchases, imports, and stocks of all the Infringing Goods.

7.   An order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in the Ressoroth Defendants' possession and along with all monies and profits due to the Ressoroth Defendants from Amazon and/or third parties as a result of all the sales of Infringing Goods.

8.   Awarding Melwani his costs, reasonable attorneys' fees, investigation fees and expenses, together with pre-judgment and post-judgment interest.

9.   Awarding Melwani such other and further relief as the Court deems just and proper.


**Plaintiff demands a trial by jury on all claims so triable.**


Dated:  February 24, 2019
        New York, New York

   **Respectfully submitted by:**

                                          Prakash Melwani (*pro se*)
                                          101 West 23rd St, Suite 163
                                          New York, New York 10011
                                          TEL:  (212) 505-1818
                                          FAX:  (212) 685-5009
                                          EMAIL: pakmelwani@comcast.net

EXHIBIT A

**Amazon Fashion**

Clothing, Shoes & Jewelry • Men • Accessories • Handkerchiefs

WOMEN    MEN    GIRLS    BOYS    BABY    LUGGAGE    SALES & DEALS    NEW ARRIVALS    prime wardrobe

New fashion & lifestyle accessories for men
delivered every month.



Royal Silk
### Fine White Silk Pocket Square by Royal Silk – Full Sized 17" x 17"

★★★★☆ ~ 260 customer reviews | 8 answered questions

Amazon's Choice for "white pocket square"

Price: $10.00 & FREE Shipping. Details
FREE Returns

Get $50 off instantly: Pay $0.00 upon approval for the Amazon Prime Store Card.

✓ Lifetime | Try Rack, Free Shipping

- 100% Silk. Luminous, luxurious 12 momme Silk Twill by Royal Silk® that glows with a beautiful, regal sheen.
- Made in Korea
- Whether formal or informal, this superb classic men's style accessory is an absolute must-have for every wardrobe.
- The large 17" size allows you to style this elegant silk handkerchief in a wide variety of softly poufs and folds
- Sparkling snow-white color will add a touch of dash and class to any tux, suit, jacket, tie, and shirt.
- The Silk Twill fabric is light, smooth, soft, and supple with an elegant drape.
- By Royal Silk | Affordable silk style | Affordable silk elegance | Since 1978

New (1) from $10.00 & FREE shipping.

☐ Report incorrect product information.

Share ⊠ 📘 🐦 @

$10.00
& FREE Shipping. Details
& FREE Returns

Get it Mon, Feb 4 - Thu, Feb 7 if you choose FREE Shipping at checkout, or

Get it Tomorrow, Jan 29 if you order within 21 hrs 39 mins and choose paid One-Day Shipping at checkout

In Stock.
Sold by Royal Silk Direct, Inc. and Fulfilled by Amazon. Gift-wrap available.

Qty: 1 ▼

☐ Try Amazon Prime and start saving today with Fast, FREE Delivery

[ Add to Cart ]

[ Buy Now ]

🔒 Secure transaction Details

[ Add to List ]

29

EXHIBIT B

**Amazon Fashion**

WOMEN    MEN    GIRLS    BOYS    BABY    LUGGAGE    SALES & DEALS    NEW ARRIVALS

Shop prime wardrobe ›

Clothing, Shoes & Jewelry › Men › Accessories › Ties, Cummerbunds & Pocket Squares › Pocket Squares

Royal Silk

## Fine White Silk Pocket Square - Full-Sized 16"x16"

★★★★★ ⌄   254 customer reviews

| 7 answered questions

✓prime imported ⌄

Price: **$10.00 & FREE Shipping on orders over $25 shipped by Amazon.** Details
FREE Returns

Get $10 off instantly: Pay $0.00 upon approval for the Amazon Prime Store Card.

✓prime Try Fast, Free Shipping ⌄

- Genuine 60 gram Silk Twill by Royal Silk. 100% Pure Silk that glows with a beautiful, subtle sheen
- Imported
- This classic men's accessory is an absolute essential for every man's wardrobe
- The sparkling pure clean white color will go with and add a touch of dash to every jacket, suit, tie, and shirt.
- The full-sized 16"x16" cut allows you to style this pocket square into a wide variety of spiffy poufs and folds.
- The Silk Twill fabric is light, smooth, soft, and supple with an elegant drape.
- The silk is hand washable or dry clean. With proper care, it should last a lifetime.

Share ✉ 📷 f 🐦 ⊚

$10.00

& FREE Shipping on orders over $25 shipped by Amazon. Details
& FREE Returns

Want it tomorrow, July 26? Order within 1 hr and choose One-Day Shipping at checkout. Details

In Stock.

Sold by resrcroh and Fulfilled by Amazon. Gift-wrap available.

Qty: 1 ⌄

☐ Try Amazon Prime and start saving today with FREE Two-Day Shipping

Add to Cart

Turn on 1-Click ordering for this browser

31

EXHIBIT C

